Excuse me. For me to hear you, you'll have to be much closer to the microphone. I'm so sorry, Your Honor. Can you hear me now? Thank you. As Your Honors are well aware, this is the second time that this matter has been before this Court. And on the first occasion, this Court held that the record as it stood was insufficient to find whether or not the prosecutor exercised a strike against the minority juror because of her race. And, of course, that's why it was remanded for an evidence-hearing hearing. But at that hearing, when the prosecutor couldn't remember six years later why he kept certain jurors, not why he struck the minority juror, but why he kept certain other jurors, the district court refused to consider any of the evidence put on, refused to consider his testimony and found that he didn't add anything significant to the record. Why do you say he refused to consider it? Well, Your Honor, he said that he wouldn't look at the fact that certain of the jurors, other biographical information about those jurors, wouldn't take that into account when doing the comparative analysis. He said, I can't consider those facts. When counsel for appellants said, well, these jurors are different because, for example, juror number 10 was from a very rural community in Imperial County. An agricultural community had been married to a farmer and pointed to these characteristics and explained why that made that juror not comparable. Well, but of course, what's quite bizarre about this case is that the prosecutor who did the strike had not done the original voir dire of Ms. McGee, and there was information about her which was quite arguably comparable. The problem is we don't know what he knew. Exactly. Which makes the whole thing quite – because he could have known it. We just don't know whether he knew it. He didn't know whether he knew it. Nobody knew whether he knew it. Exactly. What do we do with that fact? Well, the fact is that the state, the state was hypothesizing that Ms. McGee was a woman.  The state was hypothesizing that Ms. McGee was a woman. Your Honor, all the – As I understand it, she was – her husband was, in fact, involved in – he was an electrician, but he was involved in a – he worked for an irrigation district, and nobody seemed to know where she was from, so she could have been from the same place, for all we And all we know from the record that he knew about Ms. McGee was her occupation. And as the district court found, we can't speculate that he knew everything about her because the record doesn't support that. All he knew, all he recalled knowing was that she was an eligibility worker, which he understood to be a social worker. And he also testified that that was not automatically disqualifying for him, but yet he just walked in and struck her. I mean, based on that and the fact – and he could have known that she was African American. Those are the only two things he could have known. Apparently. Your Honor, her occupation alone, he said, was enough in this instance for him to kick her because it's all he knew about her was that she was a social worker. That's all he recalled knowing. And he didn't ask anything. Exactly. And I think that's where the unusual circumstances of the case are very important here. Because we have to look at this and look at all these circumstances in the context of what really happened to this prosecutor. He walked into court that day thinking he was going to sit in his office and was told, here's a file. You're in the middle of trial. The water has already started. And you don't even know the charges. You'll be giving an opening on a case. You don't know the facts. And you don't know the charges are in about an hour. So that's the reason why he stepped in and didn't ask any questions. And this is what he explained at the evidentiary hearing. I didn't do what I usually would do. Obviously, I would usually prepare. I would usually try to delve into the backgrounds of people and get them talking. And if you read what he actually did, he stood up and said, can you be fair? Can you follow the presumption of innocence? Really very vague, vague questions. No one said anything. It was not a voir dire that obviously an experienced felony prosecutor would ordinarily do. But all he was thinking, and this is what he explained at the evidentiary hearing, was, I have to give an opening in a few minutes. So he didn't get them talking. And he just looked at Christopher Kowalski, the first district attorney's notes, and he explained this at the hearing too. I looked at those notes, and that's really all I had about the prior jurors. That's all the information I had. And I didn't ask more questions because all he was thinking about was, I have to get up and tell these people what happened in the case. Well, I don't know what happened. Counsel, counsel, your explanation of the facts is plausible, but we're faced here with a finding of fact that's contrary to your position. And it seems to me that at this juncture, unlike in the previous iteration of the case, our job is to figure out whether that finding of fact is clearly erroneous. So to me, at least, it is not helpful to explain that a different finding could also have been made that wasn't made. So can you focus on our standard of review and tell me why what the district court did wasn't also a permissible understanding of the facts after the evidentiary hearing? Certainly, Your Honor. And, of course, we are dealing with the third step of Batson, is a factual question that is reviewed for clear error. But the court's legal analysis here, its application of Batson, really is a legal question. So it is a bit of a mixed question here for this Court. Because if you read, and this is laid out in detail in the brief, but as you read the district court's opinion, the report and recommendation, which was adopted in whole by the district court, it's clear that the court is not applying Batson law correctly. And that's where the clear error here is, and what I'm asking this Court to review. So what exactly is the clear error, then? Well, Your Honor, the district court took Step 2 Batson law, Step 2 law, where the State has a burden of production to show why the actual reason why the prosecutor struck the minority juror. Everyone agrees that's Step 2 law. At Step 3, obviously, you look at all of the circumstances, and comparative juror analysis is one of those circumstances that the court can look to. But the law is clear that the court must look at all of the circumstances, all of the circumstantial evidence. And then at that Step 3, it's the defendant or the Petitioner's burden to prove by a preponderance of the evidence that it was a race-based strike. What the district court did was it took Step 2 law, where the State has a burden, and it applied it to comparative analysis. It said it took factors that may have been relevant to Step 2 but may also have been relevant to Step 3, given, as you say, that one is meant to consider all the factors when one gets to Step 3. Well, Your Honor, what I'm pointing to specifically is that it's the district court found that the State failed to produce the actual reason why the non-African-American jurors were not struck, and then said, I'm going to find it an adverse inference from your inability to come forward with those actual reasons. That's what you do at Step 2. At Step 2. Well, isn't that also relevant to Step 3? It's not. It's certainly one circumstance that the prosecutor was unable to come up with. It may be understandable that he wasn't, but the fact remains that that's a gap in the evidence that simply wasn't filled for whatever reason. They could have kept the notes or made some notes or whatever, but it certainly is a fact I would assume that one must consider. It may be a fact that one can consider that he didn't remember. But the district court can't say, I will not consider any of the other circumstantial evidence because it wasn't articulated by the prosecutor. The district court is very clear when it states the State has argued that this juror – I'm going to use juror No. 10 as an example. The juror No. 10 is from Holtville, this agricultural community. But the district court specifically said, still, I cannot consider that because that is not what Mr. Baker, the prosecutor, testified to. That is Respondent, appellate counsel's speculation. Kagan, but isn't the real problem, and maybe the district judge didn't articulate it this way, but isn't this really what he was saying, that he struck Ms. Magee knowing nothing about her except her – her profession. If he had cared about what else, anything else that mattered, he presumably would have asked her or used the notes that at least told something else about her. So he walked in, he saw somebody who was, quote, an eligibility worker and was African American, and he struck her with nothing else. Given that, these other facts about these other people don't really compare to anything because he struck her with no other facts. So why are we concerned about other facts? Well, Your Honor, that is not actually what – that's not what the district court held, though. The district court refused to actually do this comparative analysis and found what he said he did here, and what he said he did here was strike her on the basis of her profession and nothing else. So therefore, why don't we just look at professions and nothing else? Yes, Your Honor. And the reason why, is Your Honor asking why he didn't delve into her occupation or more about her?   I'm asking why he didn't delve into her occupation or more about her. I understand, Your Honor, because in this case, he knew he had only heard the occupation of certain of the jurors, but the other jurors, he had heard the entirety of their background. So to say that he – he only knew she was an eligibility worker, but he knew more about these teachers. So to then look at the other jurors, he didn't ask anything, and that's where I go back to it simply doesn't – it isn't intuitive. But how did he find out these other facts about these other people? Because he was sitting there. Because he was what? He was sitting there when they spoke and during judicial point of view. That's what's unusual about this case, is the eligibility worker, Ms. McGee, he wasn't present for, and so he only had the notes. When it comes to the comparative jurors, the teachers, the two teachers – there was a teacher and a teacher's aide. He was physically present when they were – But if I may also say, I must say that I think the inference that he didn't know anything else about her, at least as much as came out earlier, seems extremely bizarre, because he said that the notes at least said whatever was said. But he was working from notes that reported the early of one year, so it would have included the rest. Well, Your Honor, what he said was all he knew was that there was the occupation listed in there, and he – no other information. And there is nothing in this record that gets him there. He said it's all he remembered. He didn't say it was all he knew. He knows that the occupation was there. He remembered the occupation was there. His recollection was reflected – refreshed, excuse me, but nothing else. So to imagine that he knew everything else is to say, I'm going to speculate that Mr. Kowalski wrote every detail down. And that's what the district court specifically said. I'm not going to do that. It's not – there's nothing in the record. Yes. Kagan. Just a different question entirely. Is there anything about the law as it's developed since our earlier opinion in our disposition in this case that you rely on that changes what we did the first time? Is there anything? About either our Ninth Circuit case law or the Supreme Court case law, you argued briefly in the brief that there was, and if there is anything that we need to know about in terms of questioning our earlier general overall approach, which – the key of which being that AEDPA didn't apply to the factual determination because it was unreasonably, erroneously done the first time. Yes, Your Honor. Is there anything that's different now in terms of that question? Well, I do believe that in Cook v. Lamarck and in Alley v. Hickman, this Court has found that California's – the simple fact that California refused to do comparative analysis for the first time on appeal for many years, and that this Court took away deference and held that it was an unreasonable application of Federal law by refusing to do a comparative analysis. And I believe that Alley and Cook have both said that the simple fact of not doing a comparative analysis does not mean that the California's decision was unreasonable. And so I do believe that that has changed the landscape of the law since this Court's first opinion came out, and that AEDPA deference should apply. And our opinion, our disposition was an unpublished opinion, so it's not self-precedential. That's correct. What about law of the case? Does that matter? Well, Your Honor, I don't think it should matter in this case, since the decision – if it came to the wrong conclusion, it should be overturned, even if it wasn't within the same case. I don't think that it should be binding in this case, since the law has changed to render this Court's prior decision incorrect for taking away AEDPA deference. What if we looked back at this State court opinion and found that it did not do a comparative analysis? Would we then do a comparative analysis and see whether its view was unreasonable given what it would have done had it done a comparative analysis? Well, Your Honor, I think that you can do a comparative analysis for the first time, even if the court of appeal didn't. I don't think that that's necessarily barred simply because they didn't. But if you're doing this in terms of AEDPA deference, we have to look to whether or not their finding in and of itself was in misapplication of the law or we defer as long as they came to a reasonable conclusion, that justices, reasonable justices could not disagree. I mean, I think that the United States Supreme Court's recent decision in Richter really would control if we go back to the AEDPA deference, which obviously we haven't briefed extensively, so I'm sorry if I'm not well prepared on the AEDPA deference in this case. But if this Court does reconsider that, I would say that we would be bound by Richter to find that the California court of appeals did come to a reasonable conclusion in finding that Mr. Baker did not exercise the strike based on race, and we would have to defer to that. But what's odd about this is that whatever the California court of appeals might have done, the trial court was specifically asked to do a comparison and didn't. So doesn't that make the trial court's determination subject to less, not AEDPA deference, but Batson deference than otherwise? And your question? I apologize. I see a matter of time for me to respond. I don't think that it's fair to say that the trial court was explicitly asked to do a comparative analysis. It's true. It's true. It is true that he did point to those statements. Did he say that the teachers, all teachers and social workers were removed? He did reference some degree of comparative analysis, but it's not as if he specifically said, Your Honor, may we do a comparative juror analysis here. And so I don't think that the trial court's decision has to be set aside for that reason, for that simple reason. Kagan, it's not that it would be set aside. It's that there's a lot of language in the case of saying that the trial court's perceptions are worth a great deal of persuasive value, but in this instance he can be, there was a gaping, and not only did the defendant mention it, but it was apparent on the surface that there was a contradiction between what he said and what he did, and the district court and the trial court just ignored it. I understand, Your Honor. I still think that the trial court here did make a certain credibility determination that he believed Mr. Baker was truthful and he saw Mr. Baker in front of him. And I think there is a measure of deference due there, but I do understand he didn't do a comparative analysis, and for that reason it is worth slightly less. Kagan. Thank you very much. We'll give you a minute or two in rebuttal. Thank you. I appreciate it. And thank you for a useful argument. May it please the Court, James Fife of Federal Defenders, on behalf of the Petitioner of Mr. Love. What about Cook and Ali and their statements about a difference despite the lack of a comparative determination by the trial court, by the U.S. State court? I have a couple of answers, Your Honor. First of all, I would direct your attention to the 28-J response in 28-A, which  value. That was filed in this case after a respondent filed a 28-J report referring to Felkner v. Jackson. As I pointed out in there. Counsel, could you speak a little bit more into the microphone, please? Certainly, Your Honor. I'll even adjust it a little bit. Is that better? Yes, thank you. First off, the respondent's AEDPA boat has sailed a long time ago. In the first report and recommendation, the magistrate found that AEDPA had been vitiated by an unreasonable application of federal law. There was no objection to that from the respondent. It went up on appeal. This court found multiple ways in which the state courts had been unreasonable. There was no PFR on that. When we went back on remand, the government never argued at any point prior to the hearing that AEDPA was supposed to apply at that hearing. In the post-hearing briefing, there was never any indication that a different standard of review applied. When we filed supplemental briefing on Ali v. Hickman, the government nowhere mentioned that Ali was authority for applying a different standard of review. And the only place that this turns up is in the opening brief in the second appeal. That has been waived multiple times. In any case, as I pointed out in my principal brief, there has been multiple findings along the way here that the state courts were applying the law and the facts unreasonably. AEDPA has been vitiated multiple times, has been found so by more than one court, has been confirmed by the district court, and has never been challenged by a respondent. In any case, what we're reviewing here today is not a state court finding. We're reviewing the finding of the Federal District Court on remand from this court. That AEDPA does not come into that. Kagan. But the problem is that under law, as case laws have developed since, as I understand it, if we were wrong the first time about whether there was AEDPA deference, then under pinholster, there never should have been a hearing to begin with. Is that right? Right. Well, that's the other thing. As I say, if the respondent really wants to insist on AEDPA applying here, really nothing that we did in the district court after the remand matters here, because it's totally on the state record. The state record shows a comparative data analysis that multiple jurors who were target jurors and non-black were not challenged. That the first strike went right to the one African American in the box. And third, that there was no questioning of any of the jurors on areas of concern. Just on the state record alone, those are three very weighty reasons recognized in this Court's case law for showing that there was a pretext in the claim of disfavored occupation. So even if we apply pinholster here and throw out everything that we've done since the remand, the government still loses on the basis of that. But was all of the information about the strange background circumstances here in the state court record? Yes, Your Honor. Can I mention one thing about that? I did want to mention that because I went back and was looking again in detail of the state court record. And here's a very interesting fact, which I'm afraid didn't come out in the briefs. All four strikes by the prosecutor against jurors, sitting jurors, were against jurors that were in draws one, two, and three. That is the draws that he did not hear, did not sit through, and did not have any opportunity to question those jurors. Every juror he struck, apart from one alternate candidate, the four sitting jurors were all the ones that were only questioned by Kowalski. Therefore- How does that counsel, how does that help you? Because the others that he struck on that same basis were non-black jurors. And perhaps he had more anxiety about the jurors that he hadn't had the opportunity to look in the eye and just was going by the nose. I guess I don't understand how that helps you, since most of the people that were stricken, I think all but, I think he struck ten or eleven, I'm forgetting the numbers. But only one was black. In fact, Your Honor, he struck four. This prosecutor, Mr. Baker, struck four jurors. The others were struck- One of them was black. One was black, the only one he was- And three were not. Three were not. Why does it make any difference whether they had been questioned by someone else? Here's the reason, is that unless he was just eyeballing people in the box and kicking people by the look on their face, he must have been reading Kowalski's notes. He would know nothing about those four people except what was in Kowalski's notes. So how would, we would either have to say he was just striking people at random  Well, he says he struck because of profession. And in fact, there was no one left on the jury who was an eligibility worker or worked for Social Security or was anywhere near that kind of a profession. That's correct. But he said, and as this Court ruled in the previous appeal, that teachers and social, he said teachers and social workers do not sit on the jury. We have to treat teachers and social workers as the same. He put them together. In the evidentiary hearing, he was emphatic about that. He said there was no difference, he said, between those two in his mind, as far as their disfavored occupation. So we have to consider teachers and social workers as part of the same group that he would have struck, because he himself put those together in his explanation to the trial judge. And in his explanation to the district court here many times. Correct. And he said that, and as far as the category of teachers goes, he said, yes, the teaching aides and instructional assistants, they're somewhat different in degree, but he said not different in kind. And he would have the same mistrust regarding them. How many social workers or broadly defined social workers did he actually strike? One, the black person. Well, if we go more broadly than that and include Ramirez. No, Ramirez is not a social worker. Okay, well let's say we do. Let's say we call him a social worker. Is there anybody else we could even arguably call a social worker? Not at all. The other two people that he struck were a student and a tow truck driver. So when he told the trial judge, I kicked both social workers, he can only be referring to McGee and Ramirez. And not a third. Well, he, if you, if you look at the total number of strikes, though, including the ones that were done by the other prosecutor, there were three that worked at, either worked at a social security office or were eligibility workers. So if you look at the whole picture more broadly, no, three were stricken, one of whom was black, and no juror on the ultimate pedigree worked as a social security worker, social worker, or eligibility worker. That's correct, Your Honor, but I just don't think that we can look to what Mr. Kowalski did to determine what Mr. Baker did. Because he said directly to the trial judge, this is my personal jury selection. He wasn't doing it because Kowalski recommended it. He wasn't doing it because of some office policy. He said, this is my personal jury selection. Also, had Kowalski had an opportunity to strike Ms. McGee? I don't think he had. He had, no, he didn't strike Ms. McGee, but here's the thing. But he had an opportunity to. Yes, she was the last person seated before adjournment on the first day. So he didn't have an opportunity. Did or did not? Did not. Oh, he did not. But interestingly, as far as the other three people that Mr. Baker struck, two of them Mr. Kowalski had passed over twice. One of them he had passed over once. These were not people that apparently were marked down in Mr. Kowalski's notes as people who have to be kicked. Because Kowalski passed over them multiple times. Which ones are you referring to now? These are jurors Ramirez, Doron, and Blevins. Ramirez and Doron were in the first draw. Therefore, Kowalski had two opportunities to kick them and didn't. Blevins was in the third draw, I believe. What about the argument, which seems to me may have some may be correct or at least possible, that the district, that the comparative juror analysis is supposed to be done on the record, and the notion that you can't, that objectively available distinctions are not relevant if the prosecutor can't state that he relied on them isn't true, that the district court, leading to the conclusion that the district court's factual findings may not be subject to a clear error standard because he did this subjective comparative analysis instead of an objective comparative analysis? Your Honor, I did argue to the district court that, in fact, the proper procedure it seems under Miller, L, is that we simply go with what the record. As the Supreme Court said that under Miller, L, the Supreme Court said that the prosecution has to stand or fall by the reason it gives. And I argued that, therefore, we shouldn't really consider anything beyond the state record, anticipating, before I'd read it, Your Honor's concurrence in Kessler, which suggests the same thing, at least on direct appeal, that we shouldn't look at anything except what was in the state record. And that certainly coincides with what Penholster is saying. So I was saying that we shouldn't be allowed to come up with additional reasons after the fact why this prosecutor acted the way he did. But if you looked at the state record, would you still look at the facts as developed with regard to the jurors who were retained, not his – even though he hadn't articulated any reliance on them? I think so, Your Honor, because that is the record. That's something the state court could do. I think any court can look at the actual factual cold record in the state court. So, for example, the fact that the government's now arguing that some of the teacher who wasn't struck had other reasons why he wouldn't have struck her, and the district court seemed to say, well, but he didn't say that. Now, does that matter that he didn't say that? Yes, it does, Your Honor, because otherwise it's just complete speculation. It's not the reason that he gave, as the Supreme Court said in Miller L. He gave exactly one reason why he struck her. She was an eligible individual. But what about the people he kept? The people he kept we know nothing about, because the trial judge in the state court didn't ask him. So what about these other people? Why did you kick this person? Well, that's what I'm trying to ask you. Is his – is the fact that he never gave a reason preclude the comparative analysis altogether, because he never gave any other reason? So you just look at what he did – the reason he gave for her, and you just compare professions and nothing else? Or do you look at other facts about those people that were retained and say, well, they're not really comparable because there are other facts about them? Well, I think you're – I think if you wanted to take as strictly what was said in Miller L., you would not go beyond what was said. He said, occupation, end of story. That's all you look at. Is there – are there other people with the same occupation and the same – with are not part of the – the suspect group who were not kicked? And that would be the end of the story. Now, that might seem a little narrow. So maybe we could go further and say, is there any other evidence that was taken at the time that at least explains why there might be any exceptions? But I don't – that wasn't here. There wasn't anything like that, because the judge didn't – the state judge didn't ask him to explain anything. Perhaps there's some tension between the notion of doing a comparative analysis and the notion of not speculating as to what the prosecutor's views might have been. Definitely, Your Honor. I mean, because – I mean, in Crittenden, this Court talked about that problem, because there is this thing called reconstructing the prosecutor's intentions from the record. But as Crittenden pointed out, that's a fine line, because the Court can just say, well, this is speculation and reject it. Or they could find it credible and maybe give it some credence in the analysis. But here the district court looked at it and said, I can't give this any credence, because he – number one, he never said these were rules. He said these were rules that don't always apply. Both the magistrate and the district judge pointed out that, look, these aren't rules. These are just like general tendencies. I can't give much credence to that. Well, doesn't that cut against you, though? No, because he wasn't applying the rules consistently. So how can we tell? If he says, I always – for instance, he said – But that leads to a fact. This is the ultimate problem in this case. Where is the burden of proof? And is the fact that he never explained himself, had basically no information about her, and claims to have gone simply on her profession, does that all cut – does that all make it so difficult for you to meet your burden that you end up losing? No, Your Honor. I think that I have multiple reasons why, even on the cold State record with nothing since the State record, why Mr. Luff should win. Number one, there were four jurors who had the same thing that he said, teachers and social workers do not sit on the jury. That's not true. There were four people – four non-black people who fit that category. He did not strike. He struck the – his first strike went to the first – the only African American in the box. That's Chinchilla. Chinchilla says that's evidence of pretext. He lied to the judge, telling the judge that Ramirez was a social worker, when he says – he testified that social security workers – This was all six years later, what he thought six years later, what he thought at the time. But he testified that what his beliefs are now are the same as they were in 2003. He testified that. He said his views were the same. He simply forgot that he had kicked Ramirez. He didn't remember anybody that he had challenged except Ms. McGee, and he only remembered her because he'd gone back and read the record. And in addition, I would say the Court pointed out that there was no questioning on the suspect area of disfavored occupation, which this Court has multiple times said is evidence of pretext. So those four things show that there was pretext here, even if we never consider a word that he said – Could you repeat the last point? What was your last point? That even just on the State record alone, without anything at the evidentiary hearing, there are four – I heard that. What was the fourth one? The fourth one is that he did not question any of the jurors on his area of concern, because he said that I could keep a teacher or a social worker if by asking them further questions I realized that they were good prosecution jurors. But he didn't do that. He refused to do that. I didn't do it particularly with regard to Ms. McGee. He didn't do it with anyone because he only used 10 percent of his time and asked five very perfunctory questions. Okay. Your time is up. Thank you very much for a useful argument as well. Ms. Hanks. Thank you, Your Honor. I would point out that if this – if this Court does take a DEPA deference and return it to that – Could you move to the microphone, please? I'm sorry. I did it again. I'm so sorry, Your Honor. If we return this matter to one of a DEPA deference and eliminate the – the record that was created during the evidentiary hearing per penholster, this Court has already said its first opinion. That Love did not meet his burden of proof, that he did not – that there was not sufficient evidence to show race discrimination. All of the information about the unusual circumstances in which the prosecutor entered this case is in the State court record. And as Love's counsel just pointed out, the fact that he only kicked – Well, what we actually said the first time is that we don't have an adequate basis for determining de novo the real reason. That's different than what might be the case if we were to look at it through a deference. True, Your Honor. But through a DEPA deference, there would be even more deference to the State court's decision that here there was no evidence of race discrimination. As it turns out, is there anything in the record, other than to reinforce what was said at the trial, is there anything different between the trial record and the State record, in fact, between the district court records? Right. There's very little different. What the State court did was it said, I think that the teachers seem more conservative. They were married to agricultural employees and things of that nature. And that's, in fact, what he confirmed at the evidentiary hearing. But he did put more evidence for the workers. But what the State court of appeals said is a little weird, because first of all, they said these other people were older. Well, I don't know how they knew that, because there was nothing about how old Ms. McGee was and her husband was retired. So where did they get that from? I have no idea. They also said something, the State court also said something about they were agri or worked in agriculture, and apparently her husband worked in agriculture. So I don't know where they got that from. And then she had two law enforcement relatives. There's no information that he knew about law enforcement or about her husband's  All he knew was that he was married to an agricultural employee. No, I'm just talking now about what the State court of appeals said in their very perfunctory attempt at a comparative study. We went back to that. Yes, they said that these teachers, he knew that they had this tie to agricultural working. One had been married to a farmer and lived in Holtville, which is this very rural agricultural community, and the other had been married to a cowboy. And I'd point out that the person who was an instructional assistant, that really wasn't the same thing as a teacher. And I think you can look at the cold record and say that's not a teacher, it's an instructional assistant, but Baker confirmed that at the evidentiary hearing, too. He didn't say that the difference between an instructional assistant, a teacher's aide, and a teacher is one of degree. He said the difference between a teacher's aide and a teacher is one of degree. Kagan. But why, during the comparative analysis, why isn't the simple fact that he knew more about these other people, knew nothing about her, and struck her anyway on a basis that doesn't hold up if you take it as a rule, and he knew nothing else, why isn't that the best evidence that there had to be a pretext? Well, because, Your Honor, he knew nothing but what was on the notes about all the people that he struck. As Love's counsel pointed out, all those four people that he struck were people that were raudiered by law. So, yes, but the people he retained, he – in order to explain why he retained them, you're relying on the fact that he knew more about them, but that's because he could have known more about her if he wanted to. Absolutely, Your Honor, but I think if you look at the questioning here, it actually shows the opposite of discrimination. It shows complete equal treatment of every single one of those four jurors. And every single one of – all the jurors, actually, but in particular the four he struck. Four being the four he struck, is that what you're saying, or the four – or the comparative group? No, the four he struck, but all of them, they were all treated the same. He didn't ask anyone anything. He didn't delve into anyone's background because of the unusual circumstances of this case. That's what makes this questioning so different and not probative the way that it was in Chinchilla and these other cases where we've looked at disparate questioning. What we have here is completely consistent questioning. It really is not showing anything. But then what we have next is a decision made on the basis of no information except her apparent race, possibly, and a fact which he did not follow through on with regard to other people he struck. Well, all we have is that he knew her occupation, and that's all he knew about her, and he disfavored social workers. On the other hand, he knew other people, may have been teachers that he disfavored, but he knew that they were from these rural conservative communities. It's a very different situation. These jurors are just not comparable. It's just not probative to say that. But they were comparative. All right. Thank you very much for your argument. It's a difficult and interesting case. Thank you very much. Thank both of you for a useful argument in a broad case. And we will recess. Thank you.
judges: Graber, Berzon, Cjj Wilken (N. Cal.), Dj